[Crim. No. 53. Fourth Appellate District.—November 18, 1931.]

THE PEOPLE, Respondent, v. CLAUDE CORBIN, Appellant.

D. G. Wettlin and Drumm, Tucker & Drumm for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

FREEMAN, J., *pro tem.*—The defendant was charged with grand theft in two counts. He was acquitted as to count one and convicted on count two. Count two alleged: "That on or about the 13th day of January, 1931, at and within said County of Orange, State of California, the crime of felony, to wit: grand theft was committed by Claude Corbin, who at the time and place last aforesaid, did then and there wilfully and feloniously steal, take and carry away 79 shares of Southern California Edison Company Common Stock of the value of $3500.00 in gold coin of the United States, the personal property of Martin Hayes."

The defendant appeals from the judgment of conviction and from the order denying a new trial and contends there were three errors committed in the trial court which would entitle him to a new trial.

The first contention is that the evidence is not sufficient to sustain the verdict. There is ample evidence in the record of the following facts: That Martin Hayes was a man eighty-nine years old and in a somewhat senile and childish condition of mind; that he was the owner of 79 shares of common stock in the Southern California Edison Company, worth at least $3,500, which stock he had previously purchased through appellant; that at some time in December, 1930, appellant sold to Hayes certain shares of Pickwick Airways stock, receiving therefor a check for $2,000; that subsequently Hayes expressed the desire to exchange his Pickwick Airways stock for additional shares of Edison common and that on January 13, 1931, appellant told Hayes that he had found a company that would trade Edison stock for Pickwick stock; that he needed more Pickwick shares in order to put over the deal and that he would also have to have the 79 shares of Edison common in order to make the exchange. Thereupon Hayes delivered both the 79 shares

of Edison common and the Pickwick stock to appellant. Some three or four days later appellant handed a stock certificate to Hayes which Hayes thought was Edison common, and which he put into his safety deposit box. The evidence shows that Hayes·was hardly able to read because of age. Appellant testified that he did not tell Hayes that this was a certificate of stock in ''Big Bear Trust'', which it was, but that he referred to it as ''trust''. Hayes did not discover that he did not have Edison stock until some time later. It is admitted by the defendant and testified to by Hayes that at no time did he want any stock except Edison common. The evidence also shows that on January 17, 1931, appellant sold the Edison stock which he had thus obtained from Hayes for $3,653.35; that he deposited this sum in a bank to his own credit; that he checked out practically the entire amount on his own personal account, and that on February 11, 1931, he had checked out all of the money except a balance of $6.36. The evidence shows that appellant never returned the Edison stock to Hayes nor paid back the money he had received from its sale. The evidence is ample to show that appellant did not use the stock for the purpose for which he had represented to Hayes it would be used, and that he converted the money to his own use and benefit. Under our statutes his acts constitute grand theft and the evidence is sufficient to sustain the verdict.

In defense of his conduct appellant contends that he 'had until April 1, 1931, in which to return this stock, but that by reason of his arrest on or about March 13, 1931, he was unable to return it. There is evidence in the record to support the testimony of Hayes that a conversation with Corbin about his having until April 1st in which to return the stock did take place, but that it was after Hayes discovered, on February 11, 1931, that the Edison stock which he supposed he had in his deposit box was not there, and found in its place some Big Bear Investment Trust certificates, which certificates had been handed to him by appellant and which he supposed was Edison common. The following appears in the record: ''Q. Did he later deliver to you any kind of stock, Claude Corbin? A. Yes, sir; Big Bear stock, I guess. I found that in my box. I didn't know I got it at all. I thought it was Edison. Q. And when you found that in your box, who was with you? A. My daughter,

Mrs. Brinkman. Q. And was that the first time that you knew you didn't have Edison common stock? A. The first time I knew it." The question raised by this defense was a question of fact which had been determined by the jury adversely to appellant upon sufficient evidence.

The second contention of appellant is that the court erred in admitting the testimony of deputy district attorney Kaufman. As to the contention that the testimony of the witness Kaufman was not admissible on the ground that it was privileged as there existed the relationship of attorney and client between witness and appellant, there is nothing in the record which will substantiate it. From the testimony of Kaufman we find the following: "Mr. and Mrs. Burns were having difficulty with some brokers in Los Angeles who insisted that they pay them a large sum of money, indirectly through the alleged activity of their son, Carl Burns. Mr. Burns employed me to make an investigation of all of the activities of Carl Burns that we could ascertain. He gave me a letter to that effect, advising me that I was representing no one else except Elmer Burns. . . . Q. By The Court: You were not employed at any time by Mr. Corbin? A. At no time, nor by Mr. Carl Burns, nor by any of the representatives of the American Investors. I was employed only by Elmer Burns, and he was so particular about our employment that he drafted a letter to us, saying he wanted to reduce the matter to writing so there wouldn't be any uncertainty as to the responsibility and whom we were working for." From the above testimony it is clear that at no time was Mr. Kaufman employed by Mr. Corbin as an attorney for or by him. He was employed by one Elmer Burns, a father whose son had had business relations with appellant, and by reason of such employment he investigated some matters in which Mr. Corbin was involved, The relationship of attorney and client did not exist, nor did any confidence reposed by Mr. Corbin in Mr. Kaufman constitute the privilege which exists between attorney and client. This was the ruling of the trial court after considerable evidence *voir dire* on this point. "It is for the trial court to determine whether the relationship of attorney and client existed and such determination is ordinarily conclusive." (27 Cal. Jur. 52, and cases there cited.)

The third contention of appellant is that the forms of verdict submitted to the jury were not proper. There is

no merit in this contention as there were submitted to the jury forms for finding the defendant guilty or not guilty on each count of the information, and if the jury desired to find the defendant guilty as a whole it was at liberty to do so. Appellant, by reason of the verdict given, is in no position to object, as a form of verdict was used which expressed the views of the jury and there is no showing that it desired a different verdict. The form of verdict given by the jury is not prejudicial to appellant. The law makes it no part of the duty of the trial judge to furnish forms of verdict to the jury, the latter is presumed to be able to formulate its own conclusion. (*People* v. *Hill*, 116 Cal. 570 [48 Pac. 711].)

It is therefore ordered that the judgment and order denying motion for a new trial be and the same are affirmed.

Barnard, P. J., and Marks, J., concurred.