[Civ. No. 23880. Second Dist., Div. One. Oct. 6, 1959.]

JOHN MARTIN (NOONAN) MAIER, a Minor, etc., Respondent, v. JOHN MANLEY NOONAN, Appellant.

Dockweiler & Dockweiler for Appellant.

Philip M. Gilbert for Respondent.

FOURT, Acting P. J.—This is an appeal from a judgment which in effect declared that the appellant was the father of the plaintiff infant child and which judgment further provided for the support and maintenance of said infant, plaintiff.

A résumé of the evidence favorable to the plaintiff (which if believed by the jury, was sufficient to support the verdict), is as follows: Rosalie Pat Maier, hereinafter referred to as Rosalie, is the mother of John Martin Noonan Maier, born June 7, 1952, and hereinafter referred to as John. Rosalie met John Manley Noonan, hereinafter referred to as Noonan in August, 1949. Noonan was a policeman in the city of Los Angeles. Rosalie and Noonan engaged in acts of sexual intercourse shortly after they met and continued with such acts over a considerable period of time. On September 13, 1951, and on September 18, 1951, Rosalie met Noonan and on each occasion they had sexual relations with each other. Later, Rosalie telephoned Noonan and told him that she was pregnant and needed help. After the child was born Rosalie saw Noonan every two months or so and asked him for assistance which he refused.

During all of the times in question Noonan was married and lived with his wife and two children. Rosalie was married to Fred Maier in 1940 or 1941 and was not finally divorced from him during any of the times in question in this case. Rosalie and Fred Maier separated in August, 1951 and he returned to live with her under the same roof about three or four months later. On September 13, 1951, and on September 18, 1951, Rosalie was staying with a friend, Lillian Mills, in Los Angeles and was not on said dates living under the same roof with her husband.

The plaintiff child was present in court and the jury had an opportunity to observe him. The jury returned a verdict to the effect that Noonan was the father and that Rosalie was the mother of John. The judge, pursuant to a stipulation, set the amounts which Noonan was to pay for the support and maintenance of John.

Pursuant to a stipulation at the time of oral argument this court now has before it the entire superior court file. That file discloses, among other things, that the complaint in this case was filed on July 23, 1954, and answered on July 28, 1954. An order to show cause was filed on behalf of the plaintiff wherein attorney's fees, costs and support and maintenance were sought. A hearing was held and for the purposes then at hand it was ruled that Noonan was not

the father of the plaintiff child. The findings of fact by the commissioner in that proceeding indicate that Rosalie testified that she met Noonan in July, 1949, and that they engaged in acts of intercourse two or three times a week until September, 1951, and that she registered the child as being the child of her and her husband, that she resided with her husband and had sexual relations with him in August, 1947, that her husband was impotent. There was in that hearing no other evidence of impotency upon the part of her husband, even though he was in court at the time of the hearing. It was also found by the commissioner that Rosalie's husband had had access to Rosalie at all times.

Judge J. T. B. Warne presided at the first trial which was held on November 14 to 16, 1955. The jury returned a verdict that Noonan was the father of the plaintiff child. At the motion for a new trial there was presented for consideration an affidavit of an attorney, Henry W. Shatford. The affidavit of Shatford set forth, among other things, that he was an attorney at law, that he had represented the Bergs in an action against Fred C. Maier and Rosalie Pat Maier, that plaintiffs in that action recovered a judgment which was entered about June 24, 1954, that about three weeks after the entry of that judgment Rosalie called the affiant on the telephone at which time a conversation, in substance as follows, took place:

"Mrs. Maier: Are you the attorney that tried that automobile case against me?

"Mr. Shatford: Yes.

"Mrs. Maier: Could you represent me in a lawsuit?

"Mr. Shatford: No, I would not care to, particularly since we have just concluded our action against you.

"Mrs. Maier: Well, can I ask you a question?

"Mr. Shatford: Yes.

"Mrs. Maier: Can I get child support for a child that I had by a police officer?

"Mr. Shatford: That depends. You were married at the time, weren't you?

"Mrs. Maier: Yes.

"Mr. Shatford. And did you have sexual intercourse with your husband and live with him within ten months prior to the birth of the child?

"Mrs. Maier: Why, sure.

"Mr. Shatford: Well, if you had intercourse with your husband then he wasn't impotent and it is my opinion that

the presumption is that the child would be the child of you and your husband and you couldn't collect any support, but I would suggest that rather than take my word for it, you consult with an attorney in Whittier where you live.

"Mrs. Maier: Okay. Thanks."

Further, that on Tuesday, November 15, 1955, while eating lunch affiant read a news story about Rosalie suing a police officer for child support; that affiant thereafter ascertained Rosalie contended her husband was impotent and had been so for many months prior to the birth of the child in question; that affiant regarded it as a fraud on the court for Rosalie to testify that her husband was impotent when she had advised the affiant that her husband was not. Affiant further stated that the affidavit was made on the basis of good conscience and after full consideration of the matter of privilege and further that affiant "is willing for the court to be the judge of this issue should the plaintiff in the above entitled action desire to raise the same," affiant further placed no blame on counsel for Rosalie and then concluded that the affidavit was freely made to the end that all of the facts might be laid before the court in the furtherance of justice.

Rosalie filed an affidavit wherein she set forth, among other things, that she had read the Shatford affidavit and that it was true that Shatford was an attorney and that he had represented the Bergs in an action against Rosalie and her husband Fred Maier and she then set forth: "That your affiant at no time discussed her personal problems *or any question pertaining to child support, determination of parental relationship or any other matter concerning her son, John Martin Noonan Maier, with Henry W. Shatford.*

"*That the conversation set forth in the affidavit of Henry W. Shatford is entirely untrue, without foundation and malicious.*" (Emphasis added.)

A motion for a new trial was granted on February 2, 1956, on the basis of the newly discovered evidence and insufficiency of the evidence. An appeal was taken by the plaintiff and later abandoned.

In a pretrial order dated April 3, 1957, prior to the second trial it is set forth ". . . stipulated that the mother was married to another man at the time that the child was conceived, *and was living in the same house with her husband.*" In the pretrial order it was also set forth that the mother claimed

that she was not cohabiting with her husband and that he was impotent at the time the child was conceived.

On June 20, 1957, there was filed a stipulation to the effect that the affidavit of Shatford, filed in connection with the motion for the new trial, might be read into evidence by the defendant on the retrial of the action, without the necessity of Shatford personally testifying and with the same force and effect as if he had personally testified, and the plaintiff waived any and all objections to the evidence and waived the right to cross-examine as to the evidence in the affidavit.

The second trial started on June 27, 1957, before Judge Ziemann. Rosalie was sworn and testified and pursuant to her request, Philip M. Gilbert was relieved as her counsel and the case was placed off calendar. Gilbert apparently was reinstated later as the attorney for Rosalie and he is presently representing her.

The third trial and the one with which we are here particularly concerned commenced September 2, 1958, and concluded the next day. The verdict and order was as heretofore indicated.

During the third trial the judge asked the attorney for Noonan if he was going to offer the testimony of Shatford as a witness and the attorney replied that he intended to do so. The judge then said that he had read the affidavit of Shatford and asked counsel for the plaintiff if he was "going to object that it was privileged" and upon counsel's answering "Yes," the judge said:

"THE COURT: I will rule with you then. It is true that a statement made to an attorney where you are seeking to employ him—but here, the affidavit, by its own terms, says she asked his advice and he gave it and I think it would be an abuse of privilege. Of course, in addition to that it is subject to so much misunderstanding and the privilege matter and I think the dignity of the privilege should be maintained."

Counsel for Noonan then offered to prove by the witness Shatford substantially what was set forth in Shatford's affidavit. Counsel for the plaintiff objected and the court sustained the objection. Thereupon, Shatford was brought forward and introduced to the judge and the judge said:

"THE COURT: Yes. I have an important call here, but I just ruled that your testimony is privileged.

"MR. SHATFORD: All right.

"THE COURT: Because of the fact that she asked advice and you gave it.

"Mr. Shatford: I see.

"The Court: Of course, just seeking employment, anything she said wouldn't be privileged but by the terms of your affidavit I feel that the best policy is to hold to privilege. . . .

" . . . . . . . . . . . .

"Before we resume I will take a short telephone call."

Section 1881, subdivision 2 of the Code of Civil Procedure reads as follows:

"Attorney and client. An attorney can not, *without the consent of his client,* be examined as to any communication made by the *client to him,* or his advice given thereon *in the course of professional employment;* nor can an attorney's secretary, stenographer, or clerk be examined, without the consent of his employer, concerning any fact the knowledge of which has been acquired in such capacity." (Emphasis added.)

Appellant now contends: 1. That the communication to Shatford is not privileged because the assistance Rosalie sought is in perpetration of a fraud; 2. That the testimony of the witness Shatford was agreed to by written stipulation on file in the action; 3. Further that the court erred in refusing to grant defendant's motion for a nonsuit and directed verdict; and 4. That the court erred in its rulings on questions of law as to the presumption of legitimacy.

For some reason which is not apparent from the reporter's transcript, neither attorney saw fit to advise and inform the judge of the affidavit of Rosalie to the effect that she did not even talk to Shatford about the child, let alone engage him as her attorney or bring into being the relationship of attorney and client, nor did either attorney advise the judge of the stipulation to the effect that the affidavit of Shatford could be used at a retrial without objection.

It appears to this court that Rosalie cannot at the time of the motion for a new trial (after the first trial), deny under oath that she ever talked to Shatford or ever sought or received any advice from him about the matter at hand and then at the third trial claim that the privilege of attorney and client existed between Shatford and herself. The attorney for Rosalie can hardly claim ignorance of the previous proceedings for the file discloses that the affidavit of Rosalie wherein she denied that she ever had even talked to Shatford about this case was prepared on his stationery and he acted as the notary before whom Rosalie swore to the truth of the statements therein contained. Out of fairness to the trial

judge the stipulation should have been called to his attention and the matter of whether the relationship of attorney and client existed should have been explored on a *voir dire* examination. There is obviously great doubt and uncertainty as to whether the communication as made by Rosalie to Shatford (if there was such a conversation) is privileged, and under the circumstances in the interests of justice the question should be settled.

 The party claiming the privilege (in this instance Rosalie), must prove the existence of the attorney and client relationship, and whether the relationship exists is a question of fact. (*McKnew* v. *Superior Court*, 23 Cal.2d 58 [142 P.2d 1] ; *People* v. *Corbin*, 118 Cal.App. 392 [5 P.2d 460] ; *Collette* v. *Sarrasin*, 184 Cal. 283 [193 P. 571].) A previous retainer is not necessary nor is a payment of a fee required to establish a relationship where the privilege can be exercised. (*Denver Tramway Co.* v. *Owens*, 20 Colo. 107 [36 P. 848].) Preliminary statements made to an attorney with the view to retaining him are held to be privileged even though the attorney later refused to accept the employment. The value of the testimony of Shatford is apparent. This is not the case of some equivocal circumstance where the defendant is grasping at some technicality to destroy the privilege. In effect, the ruling of the judge took from the jury, under the circumstances, the consideration of statements allegedly made by Rosalie to a respected member of the bar, which statements were exactly contrary to her testimony in the trial and which testimony necessarily formed the basis of the finding of the jury.

Under the circumstances it is not necessary to consider the remaining contentions of the appellant.

The judgment is reversed.

Lillie, J., and Shea, J. pro tem.,* concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 2, 1959.

---

*Assigned by Chairman of Judicial Council.