[Civ. No. 31609. First Dist., Div. Four. Nov. 30, 1972.]

WILLIAM A. SULLIVAN, Petitioner, v.
THE SUPERIOR COURT OF SAN MATEO COUNTY, Respondent;
MARY SPINGOLA et al., Real Parties in Interest.

## COUNSEL

Ralph A. Rizzo for Petitioner.

Gordon L. Rockhill as Amicus Curiae on behalf of Petitioner.

No appearance for Respondent.

Fitzgerald, Goldenberg, Zittle & Casey, Frank D. Fitzgerald and Richard A. Wylie for Real Parties in Interest.

## OPINION

**BRAY, J.**[*]—Petitioner petitions for writ of prohibition or other writ to prohibit enforcement of discovery orders of the Superior Court of San Mateo County and an order for payment of attorney's fees.

### Questions Presented

1. Evidence Code section 771, regarding a witness' use of a writing to refresh his memory, does not under the circumstances control over the code provisions protecting the confidential relationship between attorney and client.

2. Authority of the court to impose attorney's fees on motion for reconsideration.

### Record

Petitioner is the attorney for real parties in interest Mary Spingola and Nick Spingola[1] and is their attorney in an action in the San Mateo Superior

[*]Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]An amicus curiae brief in support of the petitioner was filed herein by the San Mateo County Trial Lawyers Association.

Court, entitled "Mary Spingola and Nick Spingola, plaintiffs, v. Irene Delores Parker, Dessia Parker, et al., defendants," for damages for injuries suffered by Mary Spingola in an automobile accident.

*Facts*

There is apparently no conflict as to the facts alleged in the petition. Petitioner alleges that he "had interviewed his client, MARY SPINGOLA, concerning the events surrounding an automobile accident occurring on or about August 30, 1971, said accident being the basis of the aforesaid action for damages. The aforesaid interview was conducted in the course of an attorney-client conference, during which petitioner asked questions and plaintiff, MARY SPINGOLA, gave her answers. This interview was tape-recorded, with the knowledge of client, and it was expressly represented to client that whatever was stated at this interview was a privileged communication between attorney and client, which petitioner could not reveal to anyone without client's permission."

Petitioner also alleges: "Without specifically disclosing the contents of the particular memorandum of MARY SPINGOLA, petitioner advises the Court that it is petitioner's policy, not only to take a detailed statement concerning the facts of the case, but to discuss with the client applicable law and to give initial legal opinions of client's position, based on the facts as related by the client. Petitioner's policy also encompasses the taking of a personal history and background of the client and his family, and to touch upon matters which are only of interest to the lawyer for law office administration. All the information is electronically recorded and later transcribed by office personnel."

During the taking of the deposition of Mary Spingola, defense counsel asked her if she had used anything to refresh her memory. Her counsel as well as she stated that to refresh her recollection she used a transcription made by petitioner's secretary of the electronically recorded conference between her and the attorney. It is erroneously referred to in the orders and in the petition as "the memorandum of Mary Spingola." (It is not a memorandum [see Webster's Third New Internat. Dict. (1967) pp. 1408-1409].)

The defendants then demanded the production of the "memorandum." Petitioner refused to produce it on the ground that it was protected by the attorney-client privilege. At the hearing of a motion by the Parkers to require its production, the court ordered its production. Instead of producing it, petitioner filed a motion asking the court to reconsider the previous order. At that hearing the court reaffirmed its order for production

of the "memorandum," and in addition ordered the plaintiffs and their attorneys to pay to the defendants' attorney $150 attorney's fees.

Petitioner then filed this petition to prohibit enforcement of these orders, contending that requiring the production of the "memorandum" violated the attorney-client privilege and that Mary Spingola's refreshing her memory from the "memorandum" was not a waiver of the privilege.[2]

### 1. *The conflicting statutes*

■ Section 954 of the Evidence Code provides in pertinent part: "Subject to Section 912 and except as otherwise provided in this article, the client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer if the privilege is claimed by: (a) The holder of the privilege; (b) A person who is authorized to claim the privilege . . . ; or (c) The person who was the lawyer at the time of the confidential communication, . . ."

Section 912 provides that the lawyer-client and the other privileges may be waived "if any holder of the privilege, without coercion, has disclosed a significant part of the communication or has consented to such disclosure by anyone. Consent to disclosure is manifested by any statement or other conduct of the holder of the privilege indicating his consent to the disclosure, . . ."

Section 955 provides in effect that the lawyer who received the communication shall claim the privilege whenever he is present when the communication is sought to be disclosed.

In reviewing her statements made to her attorney in the strictest confidence the client in no way is consenting to a disclosure of those statements, nor is she manifesting "by any statement or other conduct" consent to disclosure.

Section 952 of the Evidence Code provides: "As used in this article, 'confidential communication between client and lawyer' means information transmitted between a client and his lawyer in the course of that relationship and in confidence by a means which, so far as the client

---

[2] As stated in *Burke* v. *Superior Court* (1969) 71 Cal.2d 276, 277-278 [78 Cal. Rptr. 481, 455 P.2d 409], concerning the mandamus proceeding there, "This is an appropriate case, under the standard established in *Oceanside Union School Dist.* v. *Superior Court*, 58 Cal.2d 180, 185, fn. 4 [23 Cal.Rptr. 375, 373 P.2d 439], in which to review discovery orders by use of the prerogative writs rather than relegating petitioners to review on appeal from the final judgment."

is aware, discloses the information to no third persons other than those who are present to further the interest of the client in the consultation or those to whom disclosure is reasonably necessary for the transmission of the information or the accomplishment of the purpose for which the lawyer is consulted, and includes a legal opinion formed and the advice given by the lawyer in the course of that relationship."

Code of Civil Procedure section 2016, subdivision (b), expressly exempts privileged matter from discovery. "[T]he deponent may be examined regarding any matter, *not privileged,* which is relevant to the subject matter involved in the pending action, . . ." (Italics added.)

■ To successfully invoke the lawyer-client privilege, three requirements must be met. There must be a (1) communication, (2) intended to be confidential, and (3) made in the course of the lawyer-client relationship. (See, e.g., *City & County of S.F.* v. *Superior Court* (1951) 37 Cal.2d 227, 234-235 [231 P.2d 26, 25 A.L.R.2d 1418].) ■ "The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence. Adequate legal representation in the ascertainment and enforcement of rights or the prosecution or defense of litigation compels a full disclosure of the facts by the client to his attorney. 'Unless he makes known to the lawyer all the facts, the advice which follows will be useless, if not misleading; the lawsuit will be conducted along improper lines, the trial will be full of surprises, much useless litigation may result. Thirdly, unless the client knows that his lawyer cannot be compelled to reveal what is told him, the client will suppress what he thinks to be unfavorable facts.' [Citation.]" (*City & County of S.F.* v. *Superior Court, supra,* at p. 235.)

There can be no doubt that the memorandum in question is privileged. Real parties (Parker) do not argue otherwise. ■ " 'Where a person consults an attorney with a view to employing him professionally, any information acquired by the attorney in the course of interviews or negotiations looking toward such employment is privileged and cannot be disclosed, even though no actual employment of the attorney as such follows, . . .' [Citations.]" (*Estate of Dupont* (1943) 60 Cal.App.2d 276, 288 [140 P.2d 866]; see also *Maier* v. *Noonan* (1959) 174 Cal. App.2d 260, 266 [344 P.2d 373].) ■ Real parties in interest Irene Parker and Dessia Parker contend that the provisions of section 771 control in a situation of this kind and require disclosure because they claim Mary Spingola waived the privilege.

Evidence Code section 771 provides in pertinent part: "(a) . . . if a

witness, either while testifying or prior thereto, uses a writing to refresh his memory with respect to any matter about which he testifies, such writing must be produced at the hearing at the request of an adverse party and, unless the writing is so produced, the testimony of the witness concerning such matter shall be stricken. (b) If the writing is produced at the hearing, the adverse party may, if he chooses, inspect the writing, cross-examine the witness concerning it, and introduce in evidence such portion of it as may be pertinent to the testimony of the witness."

In *People* v. *Aikin* (1971) 19 Cal.App.3d 685 [97 Cal.Rptr. 251], the court found a waiver of both the attorney-client and the psychotherapist-patient privileges where a litigant placed his emotional condition in issue. There, the psychotherapist called to support the defense of the defendant's inability to premeditate conceded that he had refreshed his recollection from a report which he had made for defense counsel. The reviewing court upheld the ruling of the trial court that *because the defendant presented the defense of his mental condition,* section 771 (right to inspect a writing used by a witness to refresh his memory) controls over section 954 (lawyer-client privilege) and section 1010, et seq. (patient-psychotherapist privilege), and ordered the doctor's report produced.

The Law Revision Commission comments on Evidence Code section 952 "indicate that the attorney-client privilege pertinent to the client's revelations to the psychotherapist and the latter's diagnosis which is passed on to the lawyer so that he can advise his client on whether to present a defense based on emotional status goes only to the advice area and ends if the client and his lawyer go beyond that stage and decide to present the defense." (*People* v. *Aikin, supra,* 19 Cal.App.3d 685, 696-697.) Section 1016 expressly provides that there is no privilege concerning the mental or emotional condition of a patient if such issue is tendered by the patient. A patient's disclosures to a psychotherapist referred to the patient's lawyer, loses both the attorney-client and the doctor-patient privileges if the emotional condition of the patient is made an issue at the trial by the client and his attorney. The case is not a precedent for holding that a litigant refreshing his memory from a privileged writing is waiving his client-attorney privilege.

Evidence Code section 911's statement that "Except as otherwise provided by statute: . . . (b) No person has a privilege to refuse to disclose any matter or to refuse to produce any writing," is modified by Code of Civil Procedure section 2016 which expressly exempts privileged matter.

"For the guidance of the trial courts the proper rule is declared to be

not only one of liberal interpretation, but one that also recognizes that disclosure is a matter of right unless statutory or public policy considerations clearly prohibit it." *(Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 378 [15 Cal.Rptr. 90, 364 P.2d 266].) On the other hand, "because the privilege [the client-attorney privilege] tends to suppress otherwise relevant facts, it is to be strictly construed." *(Id.* at p. 396.)

However, in *Rigolfi* v. *Superior Court* (1963) 215 Cal.App.2d 497, 501 [30 Cal.Rptr. 317], the court, after referring to the rule in *Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, stated: "Within its range, however, [the privilege] exists by our statutes and is supported by the logic that unless the client makes known all the facts, which he will do only under the privilege, the advice which follows will be useless, if not misleading; the lawsuit will be conducted along improper lines, the trial will be full of surprises and much useless litigation may result."

However, "The privilege from disclosure accorded the client's communications to his counsel is the oldest of the confidential communication privileges. It is thought to be justified by the interest of society in the procurement of adequate legal advice and in the prompt and just determination of disputes. This interest is best served by encouraging the client to disclose all relevant facts to his attorney and by removing any apprehension that the confidential communications of the client will later be disclosed by the attorney." *(Attorney-Client Privilege in California* (1958) 10 Stan.L.Rev. 297.) "The privilege of confidential communication between client and attorney should be regarded as sacred. It is not to be whittled away by means of specious argument that it has been waived. Least of all should the courts seize upon slight and equivocal circumstances as a technical reason for destroying the privilege." *(People* v. *Kor* (1954) 129 Cal.App.2d 436, 447 [277 P.2d 94].)

In adopting section 2016 of the Code of Civil Procedure in 1957 (Stats. 1957, ch. 1904, § 3, p. 3322) relating to depositions, the Legislature stated: "All matters which are privileged against disclosure upon the trial under the law of this State are privileged against disclosure through any discovery procedure," which is language similar to that appearing in the Evidence Code. The Legislature stated concerning section 2016, "This article shall not be construed to change the law of this State with respect to the existence of any privilege, whether provided for by statute or judicial decision, . . . ."

In *Kerns Constr. Co.* v. *Superior Court* (1968) 266 Cal.App.2d 405 [72 Cal.Rptr. 74], an employee of the employer-defendant, at its request, had prepared, for the express purpose of assisting defendant's counsel,

several reports touching on the circumstances and conditions surrounding the personal injuries suffered by the plaintiff. At a deposition of the employee called by a codefendant, the employee stated that he could not testify from memory and would have to use his reports or he could not testify at all. He was supplied with his reports and used them during his testimony. Upon concluding the deposition, the examining party requested that the reports be attached to the deposition as exhibits. The employer then asserted the attorney-client and attorney-work privileges. The trial court refused an order compelling disclosure. (*Id.* at pp. 408-409.)

On a petition for writ of mandate, the appellate court held that, as the privileged records were furnished to the witness and he testified from them, the privilege was waived. The court held that the privilege should have been claimed at the point when questions were propounded to the witness which required his use of the reports to refresh his memory. (266 Cal.App.2d at pp. 413-414.)

*Kerns* is not a precedent in the case at bench as the circumstances in *Kerns* were considerably different from those in the case at bench, in that the witness testified at the deposition from the reports without objection. In the instant case, the witness refreshed her memory prior to the deposition and raised the privilege when demand was made that she produce the transcription.

In *Kelliher* v. *Ray* (1941) 43 Cal.App.2d 252 [110 P.2d 712], and in *Inouye* v. *McCall* (1939) 35 Cal.App.2d 634 [92 P.2d 386], it was held that where highway patrol officers used what were then confidential reports of the Motor Vehicle Department to refresh their memories while testifying, Code of Civil Procedure section 2047 (now Evid. Code, § 771) required the production of the reports. These situations are quite different to that in the instant case.

There is an apparent conflict between Evidence Code section 771 and other statutes dealing with the attorney-client privilege, particularly with section 2016 dealing with depositions which states, in part, "the deponent may be examined regarding any matter, not *privileged*, . . ." (Italics added.) In interpreting the various statutes on the subject, certain rules of statutory interpretation must be borne in mind. ■ We have already referred to the requirement that privilege statutes must be narrowly construed, while discovery statutes must be liberally construed. (*Greyhound Corp.* v. *Superior Court, supra,* 56 Cal.2d 355, 377, 396.) ■ "For purposes of statutory construction, the various pertinent sections of all

the codes must be read together and harmonized if possible." (*Cannon v. American Hydrocarbon Corp.* (1970) 4 Cal.App.3d 639, 648 [84 Cal. Rptr. 575].) The various statutes may be harmonized by holding that the word "writing" in section 771 was never intended to mean a transcription of a client's original discussion with her attorney concerning an accident as to which she is employing his legal services. Particularly is this so when it is realized that had the client refreshed her memory by listening to a replaying of the tape instead of reading its transcription, no claim could be made that she had waived the confidential relationship between her and her counsel. Nor could such claim be made if her attorney had told her what she had told him originally or even read to her his notes of the interview.

Section 912, Evidence Code, provides in pertinent part: "(d) A disclosure in confidence of a communication that is protected by a privilege provided by Section 954 (lawyer-client privilege) . . . when such disclosure is reasonably necessary for the accomplishment of the purpose for which the lawyer . . . was consulted, is not a waiver of the privilege." Although Mary Spingola was not asked if despite the fact that she refreshed her memory by reading the transcription whether she had an independent recollection of the facts of the accident, it may be assumed that any careful lawyer would grant her the opportunity before trial to refresh her memory by her first statements to her attorney.

Moreover, it is doubtful that the transcription was limited to Mary Spingola's statements. It would only be natural for her attorney to comment and even advise her as she stated the facts of the accident. It cannot be contended that her opponents would be entitled to such information.

Lending some light on our problem are the comments concerning section 771 made by the Legislative Committee, and the Law Revision comments.[3]

The Legislative Committee adopted verbatim the Law Revision Commissioner's comment upon what now appears as the first paragraph of section 771.

Some indication that the legislative intent concerning the word "writing" set forth in section 771 does not reach the type of "writing" (transcription of a tape) which is involved here are the decisions cited in the com-

---

[3]See Comment-Assembly Committee on Judiciary, West's Evidence Code Annotated, section 771; compare Comment, 7 Cal. Law Revision Com. Rep., pages 132-133.

ment, which were before the Legislature at the time of the adoption of section 771 and their writings are far removed in type from the "writing" here.

The Evidence Code was enacted as a single statute by the 1965 Legislature. (Stats. 1965, ch. 299, p. 1297 et seq.) The right expressed therein, under section 771, to produce a "writing" from which a witness has refreshed his or her memory, appears in division 6 of the code (Witnesses), chapter 5 (Method and Scope of Examination), article 2 (Examination of Witnesses). (*Id.,* p. 1315.) The "lawyer-client" privilege is defined in section 954 of the code, and appears in division 8 (Privileges), chapter 4 (Particular Privileges), article 3 (Lawyer-client Privilege). (*Id.,* p. 1325.)

The latter provisions (relative to the privilege here involved) followed the former ones (relative to the production of a "writing") in the single 1965 statute. Where such provisions are in conflict, ". . . it would be appropriate to apply the rule that the later provision in point of position controls the earlier provision although both are in the same statute and passed at the same time. (Citations.)" (*People* v. *Moroney* (1944) 24 Cal.2d 638, 645 [150 P.2d 888]; *Adams* v. *City & County of San Francisco* (1949) 94 Cal.App.2d 586, 593 [211 P.2d 368, 212 P.2d 272]. See 45 Cal.Jur.2d, Statutes, § 80, at p. 599.)

Also noted are the age and sanctity of the lawyer-client privilege, and the fact that both elements were discussed in a law review article (*Attorney-Client Privilege in California, supra,* 10 Stan.L.Rev. 297) which was called to the attention of the Legislature by the Law Revision Commission before the Legislature enacted the Evidence Code. (Law Revision Commission comment, following Evid. Code, § 954.)

In view of the importance of the attorney-client privilege and the unique nature of the "writing" involved here, it cannot be held that Mary Spingola waived the privilege by refreshing her recollection from it. Moreover, to hold otherwise and thereby undermine the sanctity of the attorney-client privilege may have very far-reaching effects upon attorney-client communications which are not justified by the facts of the present case.

## 2. *Attorney's fees*

As stated, the trial court on the hearing of the May 15, 1972 motion by the defendants to require the production of the transcription used by Spingola to refresh her memory, ordered the plaintiffs to produce it. Instead of doing so, the plaintiffs filed "Notice of Motion to Reconsider Order Granting Motion to Produce." On the hearing the court denied the motion

and ordered plaintiffs and their attorneys to pay defendants' attorney "reasonable attorney's fees in the sum of . . . $150.00 . . ."

Unfortunately, the court made no finding or statement as to the theory upon which the sanction is based. Obviously, the court was not proceeding in contempt, nor was it proceeding either under the general contempt statutes or under Code of Civil Procedure section 2034, subdivision (b)(2)(iv). As the court apparently imposed the sanction because the court believed the attorneys had wrongfully asserted the privilege, the sanction falls because of our ruling on the merits of the whole case.

Petition granted.

Devine, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied December 27, 1972, and the petition of real parties in interest Irene Parker and Dessia Parker for a hearing by the Supreme Court was denied January 24, 1973.