[Crim. No. 1667. Third Appellate District.—March 24, 1939.]

THE PEOPLE, Respondent, v. WILLIAM MUNDT, Appellant.

Johnson & Curtright and C. K. Curtright for Appellant.

Earl Warren, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

TUTTLE, J.—The defendant in this case was tried before a jury and convicted of the crime of robbery in the first degree. He now appeals from a judgment of conviction and an order denying motion for a new trial.

The main witness for the prosecution was John Hill. Mr. Hill had been at a dance-hall in Sacramento, and at about 2:00 o'clock A. M. on January 8, 1936, had left the dance-hall to get into his automobile which was parked on Fifth Street, just south of the corner of Fifth and J Streets. He had in his possession approximately $450 which he had drawn from the bank, with which to purchase some horses. As he came towards his automobile, the defendant and one Henry Harris stepped out, each with a drawn revolver, pointed their revolvers at him, ordered him into the automobile and got in with him. They drove over the main bridge toward the Yolo causeway, Hill driving while the defendant and Harris covered him with their guns. After proceeding a couple of miles they ordered Hill to stop, and the defendant took the wheel, with Hill placed in the front seat between defendant and Harris. Defendant then drove to a point just past the Davis end of the causeway. They stopped the car, ordered Hill out, took the $450 from him, tore his raincoat into strips, with which they bound him, and left him lying bound under the end of the causeway trestle; they then took his automobile and drove away. Hill finally broke his bonds, and spent two and a half hours walking back to Sacramento, (over seven miles). Upon his arrival in Sacramento he notified the police.

Henry Harris was caught, tried and convicted of first degree robbery and sentenced to Folsom Prison, he having a former felony record. The defendant was subsequently arrested in Colorado, and served a term in the Colorado state prison for grand theft. Upon the expiration of that sentence he was returned to Sacramento for trial upon this charge.

It is first urged as a ground for reversal that the court erred in failing to submit to the jury a form of verdict

covering robbery in the second degree. In concluding his instructions upon the law of the case, the court used the following language:

"Upon retiring to your jury room, you will first select one of your number to act as your foreman. I have directed and caused the clerk to prepare the different forms of verdict for you to take with you into the jury room. These forms have no significance in or of themselves. They are prepared by the clerk merely for the purpose of saving you the trouble of preparing it when you find a verdict. When all twelve of you have agreed upon a verdict, all your foreman will do will be to sign the particular verdict that you have all agreed upon. You can take the one which you find, on arriving at your conclusion, and return into court with the same. I read these forms of verdict to you. After the title of court and cause they are: 'We, the jury in the above entitled cause, find the defendant William Mundt guilty of the crime of robbery as charged in the information, of the first degree.' 'We, the jury in the above entitled cause, find the defendant William Mundt not guilty as charged in the information'."

There is a well-recognized rule that "the law makes it no part of the duty of the judge to furnish forms of verdict to the jury, but the latter are presumed to be able to formulate their own conclusions, and in practice, most usually do so". (*People* v. *Hill*, 116 Cal. 562, 570 [48 Pac. 711]; *People* v. *Corbin*, 118 Cal. App. 392, 396 [5 Pac. (2d) 460].) No doubt the trial judge in the instant case had this rule in mind when he expressly instructed the jury as follows: "These forms have no significance in or of themselves; they are prepared by the clerk merely for the purpose of saving you the trouble of preparing it when you find a verdict." Furthermore, it does not appear that defendant at any time requested that such a form of verdict be submitted to the jury; neither does it appear that at the time said forms of verdict were given to the jury as above set forth, any objection whatever was made by counsel for defendant, nor was any request made for permission to submit any other form or forms of verdict. We are of the opinion that the defendant, by failing to so object, waived his right to make the contention here made. It is an elementary rule that such matters must be called to the attention of the trial court, and that they cannot be raised for

the first time upon appeal. Moreover, having read the entire record in this case, we are of the opinion that the submission of a form of verdict with respect to robbery in the second degree would not be proper under the facts of the case. The record shows without contradiction that if any crime at all was committed, it was robbery in the first degree, which is defined as follows: "All robbery which is perpetrated by torture, or by a person being armed with a dangerous or deadly weapon is robbery in the first degree. All other kinds of robbery are of the second degree." (Pen. Code, sec. 211A.)

█ The defendant took the witness stand and testified that he never was at the scene of the crime, and knew nothing whatever about it. The testimony of the prosecuting witness is in conformity with the statement of facts set forth above, which shows beyond dispute that the robbery involved herein was perpetrated by defendant and another man who were armed with a deadly weapon,—that is, a revolver. We are of the opinion that this contention is without merit. (See *People* v. *Woods*, 147 Cal. 265 [81 Pac. 652, 109 Am. St. Rep. 151]; *People* v. *Lionberger*, 19 Cal. App. (2d) 284 [65 Pac. (2d) 99].)

█ It is next contended that the district attorney was guilty of misconduct. It appears that during the trial the latter had before him, and in the presence of the jury, a revolver, and that he showed this revolver to several witnesses and asked them: "Have you ever seen this gun before?" No witness was able to identify the weapon. We are of the opinion that the district attorney was proceeding in a legal and lawful manner in the presentation of the People's case, and in the absence of proof that he was acting from improper motives, we do not see how any error can be predicated upon the incident mentioned. Such an offer of proof, made in good faith, and not for the wanton purpose of raising a prejudice against the defendant, does not constitute misconduct on the part of the district attorney. (*People* v. *Barbera*, 29 Cal. App. 604, 607 [157 Pac. 532].)

█ It is further contended that the district attorney made an improper remark during the course of the trial, in the presence of the jury. It appears, however, that this remark must have been made in a very low tone, because it was neither heard by the stenographic reporter nor by the trial

690

judge. The incident taken from the record appears as follows:

"Q. What other fellow? A. The one that was with him. Q. Who is he? The Court: You have gone into that. Proceed. Mr. Johnson: (After some remark made by District Attorney which was not audible to reporter): I object to that sort of remark from the District Attorney. The Court: Proceed with the trial of the case, I have ruled, Mr. Johnson: If the Court please— The Court (interposing): I don't care to hear from either one of you; proceed wth the trial of the case. Mr. Curtright: It is nothing your Honor said. The Court: Go on."

There is nothing in the record to show that the questioned remark was communicated to the trial judge in order that he might rule upon it intelligently and take such action as might be advisable under the circumstances. We are told in appellant's brief, however, that the district attorney made the following remark: "You know who he is all right; he's the man that is in the penitentiary." It is difficult to see how such a contention can be raised, and error predicated upon such an incident, where the trial judge had no notice or knowledge of the same. Conceding that there may have been some prejudice resulting from the fact that the jury might have heard the questioned remark of the district attorney, we do not believe that defendant can raise the point here, when it was not properly raised at the trial, and where the court was given no opportunity to give a proper admonition to the jury with respect to the effect of the language used.

█ It is lastly contended that the jury deliberated only six minutes, and that this comparatively short interval indicated that the jury did not act after mature deliberation, but were motivated by some ulterior consideration. If the case were a "close" one, where evidence of guilt was very slight and inconclusive, the inference sought to be made by defendant would have some rational basis, although there ordinarily does not appear to be any relation between the length of time taken for deliberation and the strength or weakness of the evidence. The whole matter is in the realm of speculation. But here, the proof of guilt is so strong that we cannot say that the short period taken is indicative of anything but the sole fact that the jury were thoroughly convinced, when they retired, that further deliberation would be a waste of time.

The appeal is without merit, and the order denying motion for new trial and the judgment are affirmed.

Thompson, J., and Pullen, P. J., concurred.