[Crim. No. 2056.   Third Dist.   Apr. 30, 1948.]

THE PEOPLE, Respondent, v. PHIL FOOGERT, Appellant.

J. B. Freeman for Appellant.

Fred N. Howser, Attorney General, and Doris Maier, Deputy Attorney General, for Respondent.

PEEK, J.—This is an appeal by defendant from a judgment pursuant to a verdict of the jury finding him guilty of a violation of section 496bb of the Penal Code, and from an order denying his motion for a new trial. The second amended indictment under which the defendant was convicted specifically charged that on or about November 27, 1946, he "did wilfully, unlawfully, and feloniously conceal, withhold, and/or aided in the concealment and withholding from the owner of one 1940 Chevrolet Automobile, which had previously been stolen, and said defendant knowing the said 1940 Chevrolet Automobile to have been stolen."

Defendant was tried upon three counts as charged originally in an indictment found by the Grand Jury of San Joaquin County as follows: The first, a violation of section 503 of the Vehicle Code, driving an automobile without the owner's consent, the second, a violation of section 496bb in that he received the car in San Joaquin County knowing it to have been stolen, and the third, the crime for which he was convicted, to wit: concealment. At the conclusion of the State's case an amended indictment was filed in which counts 1 and 2 of the indictment were dismissed leaving only the third. At the conclusion of the trial and apparently for technical reasons, as suggested by the court, the second amended indictment above quoted was filed charging but one count, that of concealment.

Defendant does not argue that the evidence is insufficient, except as it relates to the statute of limitations and venue. However, because of the rather unique factual background and in order that the question may be more readily understood we have chosen to summarize at some length the evidence as it appears in the transcript.

On January 13, 1943, a 1940 Chevrolet business coupe owned by one Joe Foreman was stolen from a parking lot located in Wilmington, California. The car was painted gray and had a spotlight mounted on the frame at the left side of the windshield. There was but one seat although there was space where an additional or rear seat could be installed if so desired. On November 27, 1946, nearly four years after the theft in Wilmington, a car was discovered in a private garage in Stockton. In January, 1947, when a member of the highway patrol called upon Foreman to identify the car he could only state that it could be his, that because of the changes which had been made he could not identify it positively as such but that it was the same year and model. It was then

painted a dark blue, the hole where the spotlight had been mounted was plugged and painted over and a rear seat had been placed in the car. Foreman further testified he had given no one permission to drive the car.

The owner of the private garage in Stockton testified that he knew the defendant and had rented the garage to him in August, 1946, at which time defendant stated he desired to rent it for a car belonging to his brother and which had been stored for two years. This witness further testified that for two and one-half months prior to the time the officers looked at it, the car had not been out of the garage but after their examination it had been moved.

Officer Kennedy of the highway patrol testified that during an examination of the car at the garage he had a conversation with defendant who stated the car was his and that the evidence of ownership was in his possession and that he had purchased it from a veteran.

Emma C. Thiebalt, supervisor of the Chevrolet Theft Bureau for General Motors testified that when Chevrolet automobiles are assembled a record is kept of the numbers placed on various parts of the car; that such numbers were sent to her and kept as a part of the permanent record of each car. She testified concerning the numbers assigned to certain parts of two 1940 Chevrolet business coupes, which cars, if properly assembled, would have had the parts as numbered.

W. A. Snare, an employee of the National Automobile Theft Bureau testified that he was familiar with the factory assembly records, which showed the various numbers on the units assembled to make a complete automobile; that the Chevrolet car he examined in Los Angeles in January 1947 was a combination of two cars—the motor of another car having been placed in and combined with the one examined, and that the serial number of the latter, which was located under the floor mat, had been tampered with.

A. H. Whitmore, an employee of the Department of Motor Vehicles of this state testified that the records of that department showed that in 1942, Joe Foreman was the owner of a Chevrolet coupe having a certain serial number; that the department records pertaining to a second Chevrolet coupe having a different serial number showed the same was registered to one Bert N. McGowen in 1941, the legal owner being Savage-Haldeman Company of Los Angeles. On June 16, 1942, that company released its equity as legal owner, Mc-

Gowen released as registered owner and Phil Foogert became the registered owner with Greene-Haldeman as legal owner. The vehicle was so registered in 1943 and a license issued, and was registered in 1944 in the same manner. This witness also testified that in 1942, both Greene-Haldeman Company and Foogert released their respective equities but that the certificate was not received in the office of the Department of Motor Vehicles until February 10, 1947.

Sergeant Barron of the highway patrol testified that following Officer Kennedy's investigation he went to the garage where the car had been stored but that it was not there. He then sought the defendant and was informed by him that the car had been taken to Los Angeles. The defendant also stated to him that in 1944 he sold the car to one Harwood for $550, $100 of which was still owing, and that when Harwood, who was in the army, went overseas he returned it to defendant for safekeeping. Defendant further stated he had bought the car originally as a wreck and had purchased a motor from Greene-Haldeman Company, that the new motor did not have a number on it and that he stamped on the block of the motor the number taken from the pink slip of the salvaged McGowen car. At a subsequent conversation defendant told Sergeant Barron he did not understand why San Joaquin had jurisdiction when Los Angeles had agreed not to prosecute, and that no one had ever seen him operate the car.

Officer Henderson, also of the highway patrol, testified that he had investigated an accident near Palm Springs on February 5, 1943, involving a car registered to McGowen and that the damages to said car were irreparable.

Elvira Johnson testified that on February 4, 1942, she had charge of the claims department and records for the Dixie Fire Insurance Company; that she handled an insurance claim regarding the McGowen car; that the car was a total loss and was sold for salvage, the company paying off McGowen and obtaining the pink slip from him.

Captain Stilson of the Los Angeles Police Department testified that on December 10, 1946, the Foreman car was recovered, that it had no license plates and that a different motor was in the car than at the time of its theft.

The sole witness for defendant, one George Williams, testified he had known the defendant for some time and while defendant was operating the G. & P. Automobile Hospital in Los Angeles, which was a general automotive repair service employing approximately 50 people; that at the time the

witness was loan manager of the Seaboard Finance Company, that during 1942 and 1943 the G. & P. Garage had purchased, on bids, some 25 or 30 wrecked automobiles from the finance company. The witness further testified that during the first two or three months of 1943, he had borrowed from the garage and drove for several days a car of the same year and model and general description but could not say it was the 1940 Chevrolet here in question. Upon such evidence the case was submitted to the jury which returned a verdict of guilty as previously mentioned.

Appellant predicates his appeal primarily upon the grounds that the evidence is insufficient to support the judgment for two reasons, first, because even if appellant had committed the crime as charged (concealment) the same is conclusively shown to have been committed more than three years before the finding of the indictment, and therefore the statute of limitations had run, and second, the crime, if committed by appellant, likewise is conclusively shown to have been committed in Los Angeles and not in San Joaquin County, and therefore the latter county was without jurisdiction to hear the case.

With reference to the first question defendant contends that the crime comes within the provisions of section 800 of the Penal Code; that the statute is jurisdictional (*People* v. *McGee,* 1 Cal.2d 611, 613 [36 P.2d 378]) and that the burden is cast upon the state to show that the crime charged was committed within the period of limitations. (*People* v. *James,* 59 Cal.App.2d 121, 122 [138 P.2d 30].) We are entirely in accord with such statement of the law but we cannot agree with appellant's contention that the evidence conclusively shows that the statute has run. It is his argument that as it is undisputed the car was stolen in January 1943, therefore the testimony of the witness Williams that he borrowed from the G. & P. Automobile Hospital a car of the same year and model during the first two or three months of 1943, is conclusive that some time prior to such use by Williams, and probably during the first two or three months of that year, the Foreman car had been changed in appearance and structure and the crime of concealment completed as of that date.

It must be noted that Williams did not testify that the car he borrowed and drove was the Foreman car. On cross-examination he specifically stated he did not know if it was that particular car and that he had no recollection of the license

number or other identification. Additionally he testified he did not borrow the car from defendant personally but from the G. & P. Automobile Hospital, that approximately 50 people were employed there, and that when he returned to get his own car after its repairs were finished he merely left the borrowed car at the garage.

Such evidence does not necessarily establish the fact that defendant had either possession or knowledge that the car was stolen in 1943 or that the mechanical or structural changes were made prior to that date. At most this evidence would raise only a factual question for determination by the jury and which by its verdict it decided against defendant.

The only dates which appear to be conclusively established are (1) the date of the theft of the Foreman car and (2) the date charged in the amended indictment, to wit: November 27, 1946, when appellant was in possession of a stolen 1940 Chevrolet automobile which he was concealing in a private garage in Stockton, California. The latter act was clearly a violation of the statute and within the three-year period to the filing of the indictment.

By reason of the conclusion we have reached in regard to the foregoing, particularly the validity of the date of November 27, 1946, as charged, it becomes unnecessary to consider the specific question raised by defendant as to whether or not concealment is or is not a continuing crime. The evidence here does not merely show a single act of concealment and a continued withholding of the car from the owner as a result thereof, but specific affirmative acts of concealment calculated to conceal the car from its owner at the time charged in the indictment.

Defendant's next contention that there is no evidence that the crime was committed in San Joaquin County must of necessity fall for the same reason and that it also is contrary to the implied findings of the jury. There is ample evidence of the concealment of the car in San Joaquin County—its storage in a private garage in a camouflaged state, the failure to register the vehicle, contradictory statements by defendant regarding its ownership, and its disappearance immediately following its discovery by highway patrolmen were all acts or evidence of acts of concealment within that county (see *People* v. *McGinnis*, 55 Cal.App.2d 931 [132 P.2d 30]; 53 C.J. 507) which gave the court jurisdiction. (Pen. Code, § 781.)

■ Defendant next attacks the verdict as being "insufficient, defective, illegal and ambiguous." Specifically the verdict states:

"We, the Jury in the above entitled cause, find the defendant, Phil Foogert, guilty of a violation of Section 496bb of the Penal Code of the State of California, a felony, in this that the said Phil Foogert did willfully, unlawfully and feloniously conceal, withhold and/or aided in the concealment and withholding from the owner of one 1940 Chevrolet Automobile, which had previously been stolen, and said defendant, knowing the said 1940 Chevrolet Automobile to have been stolen, in violation of Section 496bb of the Penal Code of the State of California, a felony."

It is his contention that by such verdict the jury did not find on two of the main issues presented: (1) when the crime was committed—that is, either on November 27, 1946 as contended by the prosecution or "as charged" in the amended indictment or during the first part of 1943 as contended by defendant and (2) where the crime was committed—in San Joaquin County, in accordance with the state's contention, or Los Angeles County, as contended by defendant. It is defendant's further argument in this regard that in either case, whether as to place or time, had the jury merely confined itself to a verdict of "guilty" or "guilty as charged" such difficulties might have been obviated. But, he says, having failed to follow either course and having gone into detail as to its findings but not completely enough to cover the essential elements of the issues of the offense as presented to it, the verdict and resulting judgment must be set aside upon the authority of *People* v. *Tilley,* 135 Cal. 61 [67 P. 42] and *People* v. *Murray,* 42 Cal.App.2d 209 [108 P.2d 748].

In the Tilley case a judgment based upon a verdict of ". . . Guilty of receiving stolen property" was reversed because of the insufficiency of the verdict. The court in giving the reason for its conclusion stated at pages 63-64: "Under the laws of this state there are two species of the crime of receiving stolen property,—namely, that of receiving such property,—knowing it to be stolen,—for one's 'own gain' (as is charged in the information), and that of receiving it with intent 'to prevent the owner from again possessing his property.' And there is nothing in the verdict from which it can be determined of which of these crimes, if either, it was the intent of the jury to convict the defendant." Such a condition is not presented

in the instant case. Although the later Murray case cited the Tilley case, the citation appears solely for the purpose of showing that the form of verdict returned, finding the defendant "guilty of . . . receiving stolen property, as charged in the information" is the form which the Supreme Court by dictum in the Tilley case, stated would have cured the otherwise invalid verdict.

In the more recent case of *People* v. *McKinney,* 71 Cal.App. 2d 5 [161 P.2d 957], the jury, by separate verdicts, found the defendants ". . . guilty of receiving stolen property" and ". . . guilty of conspiracy to receive stolen property." Upon appeal the defendants therein raised the precise issue presented by appellant herein and likewise cited and relied upon the Tilley and Murray cases, *supra,* arguing that such verdicts lacked the essential elements of the crime charged. The court in determining the questions thus raised observed that although such verdicts were not in the form approved by section 1151 of the Penal Code nevertheless under section 1404 of that code unless the form or error attacked actually prejudiced the defendant such error would not render the verdict invalid.

Here the second amended indictment which was filed at the conclusion of the trial distinctly charged defendant with the commission of the crime of concealment in substantially the same language as the verdict except that in the verdict the date of the commission thereof and the place of commission as charged in the indictment were omitted. And it has been held that if the verdict expresses an intent to convict for the crime charged, the form of the verdict is not material. (*People* v. *Mercado,* 59 Cal.App. 69-74 [209 P. 1035].)

Also it is to be noted that the court thoroughly instructed the jury on the nature and elements of the offense and such instructions coming after the elimination of all but one count, it is difficult to see wherein defendant was prejudiced. Substance is added to such conclusion by reason of the fact that no objection was taken by defendant to the form of the verdict when it was returned as provided in section 1161 of the Penal Code (see *People* v. *Gayle,* 202 Cal. 159, 163 [259 P. 750]) nor does the record show that the question was raised on the motion for a new trial. To the contrary it would appear that the question is raised for the first time on appeal, a practice likewise condemned in the McKinney case, *supra.* (See, also, *Johnson* v. *Visher,* 96 Cal. 310 [31 P. 106]; *People* v. *Morley,* 8 Cal.App. 372, 376 [97 P. 84].)

The case of *People* v. *Tilley, supra,* preceded section 4½ of article VI of the Constitution, and therefore the court was bound by the rules of strict interpretation then prevailing and that injury is presumed from error. It should be noted further that the rule in that case has since been questioned on these grounds. (*People* v. *Chavez,* 11 Cal.App.2d 388 [53 P.2d 1020]; *People* v. *McKinney, supra.*) The purpose of article VI, section 4½ of the Constitution is to require a reviewing court to declare as a matter of law, whether the error found to be present has prejudiced the substantial rights of the party charging the error. (*Tupman* v. *Haberkern,* 208 Cal. 256 [280 P. 970].) It necessarily follows where as here mere technical error has been established only academically, and in addition there is a complete lack of any showing of prejudice, we must conclude that the contention so raised by defendant is not well taken.

Further error is charged by defendant in the use of the words "and/or" in the verdict, which it is alleged render the verdict ambiguous, and necessitate a reversal. In support thereof defendant has cited *In re Bell,* 19 Cal.2d 488 [122 P.2d 22]. The defendants in the Bell case were charged with violation of a local antipicketing ordinance, certain sections of which were found valid while certain other sections were found to be unconstitutional. It is true, as defendant contends, that the use of the phrase "and/or" was criticized in that case since it could not be ascertained whether defendants were tried and convicted of a violation of the valid or invalid portions of the ordinance. However, that proceeding being one in habeas corpus, the burden fell upon defendants therein to show that they were not tried and convicted of violating the valid part of the statute, and having failed to do so the writ was discharged and the petitioners remanded to custody. Obviously a like situation is not presented in the instant appeal, and therefore the portions of the Bell opinion relied upon by defendant herein are wholly inapplicable to the questions here presented.

Here the phrase "and/or" is placed between two phrases in the indictment and verdict which are for all practical purposes synonymous and therefore there could be no ambiguity either in the verdict or the intent of the jury, and while an indictment in such form might possibly be demurrable (see *People* v. *Tomlinson,* 35 Cal. 503) that course was not followed by defendant nor was objection made to the form of the

verdict in the trial court, hence such objection cannot be raised for the first time on appeal.

Defendant's final attack is directed at the following instruction given to the jury by the trial judge:

"It is necessary for the People to prove beyond a reasonable doubt and to a moral certainty that the automobile in this case was stolen.

However, it is not necessary to prove who stole the automobile if in fact this automobile was stolen."

The cases cited by defendant on this question (*People* v. *Jacobs,* 73 Cal.App. 334 [238 P. 770] and *People* v. *Bausell,* 18 Cal.App.2d 15 [62 P.2d 774]) dealt with the offense of receiving stolen property and not with the offense of concealment as charged in the present case. It must be noted further that in both of the cited cases the court enunciated the rule that there must be *some* evidence that the property was stolen by some person other than the defendant charged with illicitly receiving it—this for the reason that the accused could not be both the thief and the receiver.

In *People* v. *Jacobs* this requirement was said to have been sufficiently satisfied by the defendant's own statements. The court stated in this connection at page 341:

"We are to inquire, then, what evidence there was in the present case to show that the car was not stolen by appellant. He himself accounted for his whereabouts on the evening of the theft in such a manner as to demonstrate, if the jury believed him, that he was not the thief. He in effect, therefore, denied that he was the thief."

Turning to the record herein we find evidence contained in statements by defendant to police officers that he purchased the motor from a Los Angeles dealer; that the car was his; that he bought it from a veteran, and his statement to the owner of the garage where it was stored that the car belonged to his brother, which more than satisfies the evidentiary requirement as stated in the cases cited by defendant.

While there is thus ample evidence upon which the jury could have concluded that the appellant did not steal the car, this fact does not obviate the objection raised by the appellant that a finding by the jury that the appellant did steal the car, would be consistent with the language of this instruction, which merely negatives the necessity of the prosecution identifying the thief.

The problem raised presents the question of whether it is necessary to show under a prosecution for violation of Penal

Code, section 496bb for concealing stolen property that the defendant was not the thief. Under the rule laid down in the receiving stolen property cases it is clearly not required that such fact if essential must be proved beyond a reasonable doubt, but only that there must be *some* evidence tending to show the fact.

While in a proper case it might be held that the thief could also be guilty of a violation of section 496bb by reason of affirmative acts of concealment occurring subsequent to the theft and constituting a new and distinct offense on the analogy that a thief may be guilty of driving the car without the owner's consent as an offense separate from the theft (See *People* v. *Cuevas,* 18 Cal.App.2d 151 [63 P.2d 311]), in view of the entire record here it is unnecessary to decide the point. There is no evidence in the record which would support a finding that the defendant stole the car. There is evidence, above referred to, which supports a contrary conclusion. Since the jury would not have been justified in finding to the contrary, it must be assumed that they found in accordance with the only evidence before them. It follows that the defendant was not prejudiced by the instruction given although it is not happily worded or as complete as it might have been.

For the foregoing reasons the judgment and order appealed from are affirmed.

Adams, P. J., and Thompson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 27, 1948. Schauer, J., voted for a hearing.