[Crim. No. 16033. First Dist., Div. One. Sept. 29, 1977.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN BRATIS et al., Defendants and Appellants.

**COUNSEL**

Harry Schenk, George T. Davis and Joseph C. Morehead for Defendants and Appellants.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Herbert F. Wilkinson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**SIMS, Acting P. J.**—The three defendants have appealed from orders placing them on probation following their conviction of conspiracy, in violation of section 182 of the Penal Code, to violate sections 19666 and 19667 of the Business and Professions Code, which respectively prohibit and punish as misdemeanors the alteration or counterfeiting of any parimutuel ticket, and the possession of any altered, forged or counterfeit parimutuel ticket. They were also each found guilty of both substantive offenses, but imposition of sentence was suspended on those counts.

In identical briefs the defendants John Bratis and Dennis Cambitsis contend that sections 19666 and 19667 of the Business and Professions Code are void for vagueness because they fail to provide adequate notice of prohibited conduct, and that the failure of the jury to return a general verdict on the conspiracy charge deprived the court of jurisdiction to enter judgments of conviction (orders admitting each defendant to probation) on that charge, and that the failure of the jury to render a clear and precise verdict rendered such convictions improper. The defendant Peter Bratis advances similar contentions; and the defendant John Bratis alone additionally contends that the evidence is insufficient to sustain his conviction on any of the charges. A review of the record and the applicable law reflects that the statute and charges are framed with sufficient certainty; that the court properly found that the jury had convicted the defendants of conspiracy; and that the evidence is sufficient to sustain the conviction of John Bratis. The orders admitting the defendants to probation must be affirmed.

The testimony introduced by the prosecution, which was apparently accepted by the jury, showed that some nine months before the events giving rise to their arrest, the defendant Peter Bratis and one Al Livas, who was subsequently arrested with him,[1] arranged with a firm to secure some rubber stamps which would reproduce numbers and words duplicating cutouts which they produced as exemplars. The cutouts were recognized as being numbers off of parimutuel tickets. An employee of the manufacturer notified the Federal Bureau of Investigation of what had been requested, and, at its request, kept the bureau advised of developments. The order was made in Bratis' name, although Livas conducted much of the negotiations. The testimony of two clerks of the manufacturer conflicted as to whether Bratis or Livas picked up the

---

[1] At the time of the trial, Livas was in jail in Illinois, and California was in line behind Wisconsin as far as extradition of him was concerned.

rubber stamps in July 1975, but Livas apparently picked up a second order in August.

On January 20, 1976, Peter Bratis, whose picture had been circulated by law enforcement officials, apparently as a result of the tip from the rubber stamp company, was recognized at the Bay Meadows racetrack. John Bratis was with him. The following day the two Bratis brothers and Cambitsis rented a van from Hertz Rent-A-Truck in South San Francisco, and secured some disposable furniture pads which were placed over the windows of the van.

Later that day John Bratis and Cambitsis were observed together at the racetrack. The former was observed as he picked up discarded parimutuel tickets. Later John was seen as he left the parked van and approached and met Cambitsis. Subsequently, after a photo finish of the fifth race John Bratis was observed going through some bushes. He yelled in the direction of the yellow van and received apparent recognition from Cambitsis, who leaned out the window of the van. John was taken into custody, and officers went to the van. There they found Peter Bratis, Cambitsis and Livas, altered and genuine parimutuel tickets, and materials for altering the tickets.

The three defendants testified and denied any complicity in connection with the alteration of the tickets. They all attributed any wrongdoing solely to Livas.

I

Business and Professions Code section 19666 reads: "No person shall alter or counterfeit, or attempt to alter or counterfeit, any parimutuel ticket."

Section 19667 provides: "No person shall knowingly have in his possession any altered, forged, or counterfeit parimutuel ticket."

In *Connally* v. *General Const. Co.* (1926) 269 U.S. 385 [70 L.Ed. 322, 46 S.Ct. 126], the court enunciated the following requirement of certainty for due process of law. "That the terms of a penal statute creating a new offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties, is a well-recognized requirement, consonant alike with ordinary notions of fair play and the settled rules of law. And a statute which either forbids

or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. [Citations.]" (269 U.S. at p. 391 [70 L.Ed. at p. 328]; see also *Papachristou* v. *City of Jacksonville* (1972) 405 U.S. 156, 162 [31 L.Ed.2d 110, 115-116, 92 S.Ct. 839]; *United States* v. *National Dairy Corp.* (1963) 372 U.S. 29, 32-33 [9 L.Ed.2d 561, 565-566, 83 S.Ct. 594]; *McKinney* v. *Parsons* (5th Cir. 1975) 513 F.2d 264, 269-270 [cert. den., 423 U.S. 960 (46 L.Ed.2d 289, 96 S.Ct. 376)]; *Bowland* v. *Municipal Court* (1976) 18 Cal.3d 479, 491-492 [134 Cal.Rptr. 630, 556 P.2d 1081]; *In re Bell* (1942) 19 Cal.2d 488, 496 [122 P.2d 22]; and 1 Witkin, Cal. Crimes (1963) § 19, pp. 23-24.)

■ Here defendants contend the statutes are unconstitutionally vague because they fail to set forth the standards to be used in determining the nature or degree of alteration necessary to constitute the offense, because they fail to require that the alteration would have to materially affect the rights of the issuer and alterer, and because they fail to require that the alteration be made with the intent to defraud.

To alter has been judicially defined to mean modifying something without changing it into something else. (See *Priest* v. *Housing Authority* (1969) 275 Cal.App.2d 751, 756 [80 Cal.Rptr. 145] [construing Lab. Code, § 1720].) It is established that an alteration of a negotiable instrument means a physical alteration of the instrument in such a manner as to mutually affect the rights of the parties. (*Borden* v. *Berg* (1965) 232 Cal.App.2d 169, 172 [42 Cal.Rptr. 664].) ■ As used in connection with the forgery statutes in the Penal Code (§ 470 et seq.), it is recognized that alteration is within the definition of forgery and is precise enough to give adequate notice to persons of ordinary intelligence. (See 1 Witkin, *op. cit.,* § 503, p. 458.) ■ Although the sections involved here are found in another code, the juxtaposition of the words "counterfeit" in both sections and the word "forged" in section 19667 makes it clear that the alteration referred to and prohibited is an alteration with intent to defraud, and not a mere innocent mutilation of the parimutuel ticket.

■ "It is elementary that, if possible, statutes will be so construed as to avoid absurd applications and to uphold their validity. [Citation.] A statute 'will not be given an interpretation in conflict with its clear purpose, and . . . general words used therein will be given a restricted meaning when reason and justice require it, rather than a literal meaning which would lead to an unjust and absurd consequence.' (*People* v.

*Kelley* (1937), 27 Cal.App.2d Supp. 771, 774 [70 P.2d 276]; [citation].)" (*In re Cregler* (1961) 56 Cal.2d 308, 312 [14 Cal.Rptr. 289, 363 P.2d 305]; see also *Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479, 492; *In re Huddleson* (1964) 229 Cal.App.2d 618, 621-625 [40 Cal.Rptr. 581]; and *People* v. *Buese* (1963) 220 Cal.App.2d 802, 804-808 [34 Cal.Rptr. 102]; and 1 Witkin, *op. cit., supra,* § 25, p. 28, and (1975 supp.) p. 29.)[2]

 ▮ Furthermore in this case it is clear that the jury was instructed that it had to find the specific intent to defraud and, as well, that the alteration was material. ▮ "The rule is well established, however, that one will not be heard to attack a statute on grounds that are not shown to be applicable to himself and that a court will not consider every conceivable situation which might arise under the language of the statute and will not consider the question of constitutionality with reference to hypothetical situations. [Citations.] Petitioner has not shown that the statute is being invoked against him in the aspects or under the circumstances which he suggests, and hence may not be heard to complain." (*In re Cregler, supra,* 56 Cal.2d 308, 313; see also *Bowland* v. *Municipal Court, supra,* 18 Cal.3d 479, 492; *People* v. *Rehman* (1967) 253 Cal.App.2d 119, 154 [61 Cal.Rptr. 65] [cert. den., 390 U.S. 947 (19 L.Ed.2d 1136, 88 S.Ct. 1033)]; and *People* v. *Buese, supra,* 220 Cal.App.2d 802, 806.) ▮ Defendants are not in a position to complain that the statutes might be applied to a person making an immaterial alteration without any intent to defraud. We consider that when read in their entirety the statutes preclude such a construction. They are sufficiently definite in defining a criminal offense and were properly applied in this case.

## II

At the conclusion of the testimony and following argument, the jury was given general verdict forms for each count of the information for

---

[2]The People rely on the principle that the requisite criminal intent will be implied from acts in violation of a statute. (See *People* v. *Brocklehurst* (1971) 14 Cal.App.3d 473, 481 [92 Cal.Rptr. 340] (Ault, J., conc.); *People* v. *Peak* (1944) 66 Cal.App.2d 894, 902 [153 P.2d 464]; and *People* v. *McCalla* (1923) 63 Cal.App. 783, 794 [220 P. 436] [disapproved on other grounds in *People* v. *Elliot* (1960) 54 Cal.2d 498, 503 (6 Cal.Rptr. 753, 354 P.2d 225)].) That can only be true if the statute is construed as suggested above. If it cannot be so construed, and embraces noncriminal conduct, or is so vague as to fail to convey an understanding of what is prohibited, it would be a violation of due process of law to impose criminal responsibility.

each of the defendants.[3] With respect to the foregoing verdict forms the court advised the jury: "In this case there are *18* possible verdicts as to Counts *1, 2, & 3 among all defendants.* These various possible verdicts are set forth in the forms of verdict which you will receive. Only one of the possible verdicts may be returned by you [as to any particular count]. If you all have agreed upon one verdict [as to a particular count], the corresponding form is the only verdict form to be signed [as to that count]. The other forms are to be left unsigned." (Italics interlineation by the court on CALJIC No. 17.49.)

In addition to the 18 verdict forms the court also gave the jurors 3 forms embodying special findings on the objects of the alleged conspiracy.[4] With respect to the special finding forms the court charged the jury as follows: "In order to find any of the defendants guilty of the crime of conspiracy, you must find beyond a reasonable doubt that at least two of the defendants conspired to commit one or more of the above mentioned B[usiness] & P[rofessions] C[ode] violations and you must unanimously agree as to which particular crime or crimes he conspired to commit. [¶] You will include a finding on the question of which of said alleged crimes the jury unanimously finds the defendant conspired to commit on a form that will be supplied for that purpose."

After deliberating approximately two hours the jury, on June 25, 1976, *returned to court and the foreman handed six general verdicts and three* special findings to the clerk of the court. The jury found each of the defendants guilty of each of the two misdemeanors charged, and also

---

[3]These forms read as follows:

"VERDICT [¶] WE, THE JURY IN THE ABOVE ENTITLED CAUSE find the defendant [naming respectively each of the defendants] GUILTY [or "NOT GUILTY"] of the crime of FORGERY BY ALTERATION OF PARI MUTUEL TICKET in violation of Section 19666, Business and Professions Code, State of California, as charged in Count I of the Information herein. . . ."

"VERDICT [¶] WE, THE JURY IN THE ABOVE ENTITLED CAUSE find the defendant [naming respectively each of the defendants] GUILTY [or "NOT GUILTY"] of the crime of POSSESSION OF FORGED PARI MUTUEL TICKET in violation of Section 19667, Business and Professions Code, State of California, as charged in Count II of the Information herein. . . ."

"VERDICT [¶] WE, THE JURY IN THE ABOVE ENTITLED CAUSE find the defendant [naming respectively each of the defendants] GUILTY [or "NOT GUILTY"] of the crime of CONSPIRACY in violation of Penal Code Section 182, State of California, as charged in Count III in the Information. . . ."

[4]"FINDING ON OBJECTS OF CONSPIRACY [¶] WE THE JURY IN THE ABOVE ENTITLED CAUSE, find the defendant [naming respectively each of the defendants] conspired to commit the crime opposite the designation of which there has been placed on [*sic*] 'X'. [¶] 1. Forgery by an alteration of pari mutuel ticket, in violation of Business and Professions Code Section 19666. [] [¶] 2. Possession of forged pari mutuel ticket, in violation of Business and Professions Code Section 19667.[]. . . ."

returned a special finding against each of the defendants indicating by "X"s in each bracket that he conspired to commit both of the crimes referred to in the special finding. The clerk read the verdicts and findings, which were dated and signed by the foreman, to the jury and no objection was voiced. At the request of the attorney for Peter Bratis, who was appeared specially for all of defendants at the return of the verdict, the jury was polled as to the verdict on count I, violation of section 19666. He expressly indicated he did not request that a further poll be conducted as to counts II and III. The verdicts and findings were recorded and the jury was discharged, without anyone apparently noticing or objecting that no general verdict of guilt or acquittal had been returned on count III, the conspiracy count.

Shortly after the jury had been discharged, the bailiff discovered on the table in the jury room six forms of verdict, three guilty verdicts and three not guilty verdicts for count III. There were two verdict forms for each appellant. The verdicts were not signed by the foreman.

· On August 25, 1976, at the hearing on probation report and imposition of sentence, defense counsel stated that there was legal cause as to why sentence should not be pronounced as to count III, the conspiracy count. Defense counsel indicated that the reason for this was that the jury had rendered a special verdict and not a general verdict as to count III. After hearing arguments by all sides, the court ordered the entry of a judgment of conviction on count III of the information. The court thereupon suspended the imposition of judgment as to counts I and II of the information. Each of the defendants was placed on three years formal probation on the conspiracy charge. Under the terms of the probation each was required to seek and maintain employment and refrain from frequenting any race track in California. Each was also given a 90-day county jail sentence as a condition of probation.

Penal Code section 1150 provides: "The jury must render a general verdict, except that in a superior court, when they are in doubt as to the legal effect of the facts proved, they may, except upon a trial for libel, find a special verdict." Section 1151 states: "A general verdict upon a plea of not guilty is either 'guilty' or 'not guilty,' which imports a conviction or acquittal of the offense charged in the accusatory pleading. Upon a plea of a former conviction or acquittal of the offense, charged, or upon a plea of once in jeopardy, the general verdict is either 'for the people' or 'for the defendant.' When the defendant is acquitted on the

ground of a variance between the accusatory pleading and the proof, the verdict is 'not guilty by reason of variance between charge and proof.' "

The defendants contend that the foregoing sections make the return of a general verdict mandatory, and that there was no authority and no warrant for entering a conviction and imposing punishment on the basis of the special findings. Preliminarily the People claim that the defendants are barred from attacking their convictions and the orders entered thereon because they failed to object to the form of verdicts. (See *People* v. *Nichols* (1967) 255 Cal.App.2d 217, 224 [62 Cal.Rptr. 854]; *People* v. *Gonzales* (1960) 187 Cal.App.2d 769, 772 [10 Cal.Rptr. 12]; and *People* v. *Mundt* (1939) 31 Cal.App.2d 685, 688-689 [88 P.2d 767].) There is no merit to that claim. The defendants are not attacking the form of the jury verdicts or the submission of the special finding. Their attack is on the jury's failure to render a verdict on any of the approved verdict forms for the third cause of action.

The People also suggest that the defendants' objections are not cognizable because they are not of a type that can be raised either in arrest of judgment (Pen. Code, §§ 1185-1186), or by motion for a new trial (*id.*, § 1181). It is true that the first type of objection must depend on a prior attack of the charges under section 1004. In *People* v. *Sainz* (1967) 253 Cal.App.2d 496 [61 Cal.Rptr. 196], the court ruled: "A statutory right, a motion for a new trial in a criminal case may be made only on the grounds enumerated in section 1181, Penal Code. [Citation.]" (253 Cal.App.2d at p. 500.) The defendants claim that the objection was proper because the verdict or finding was contrary to law as contemplated by subdivision 6 of section 1181. It has been stated, however: "If the verdict itself is in no degree opposed to the law applicable to the case in the light of the evidence received on the trial, it is not 'contrary to law' within the meaning of that term as used in the Penal Code, no matter what causes may have operated to influence the jury to render it." (19 Cal.Jur.3d, Criminal Law, § 1213, p. 392.) On the other hand the failure to return a verdict either way may be a ground for a new trial within subdivision 3 of section 1181 which provides as a ground: "When the jury has . . . been guilty of any misconduct by which a fair and due consideration of the case has been prevented." Subdivision 5 also provides: "When the court . . . has erred in the decision of any question of law arising during the course of the trial . . . ." If the entry of the special finding be deemed the entry of a verdict of guilty, the subsequent objections at sentencing were properly entertained. If, as appears from

the record, the question of the legal effect of the special finding was reserved until the time of sentencing, the defendants' objections at that hearing were timely. We conclude that the defendants are not barred from asserting their objections for the reasons advanced by the People.

Nevertheless some consideration may be given to the defendants' failure to point out the shortcomings in the jury's verdicts and finding when they were announced. Section 1161 of the Penal Code provides in relevant part: ". . . If the jury render a verdict which is neither general nor special, the court may direct them to reconsider it, and it cannot be recorded until it is rendered in some form from which it can be clearly understood that the intent of the jury is either to render a general verdict or to find the facts specially and to leave the judgment to the court." (See also § 1156 as set forth below.) In the absence of any objection from the defendants at that time, the court was entitled to believe that it was clearly understood that it was the intent of the jury to find the facts specially and to leave the judgment to the court. (See *People* v. *Gayle* (1927) 202 Cal. 159, 163 [259 P. 750]; *People* v. *Israel* (1949) 91 Cal.App.2d 773, 778 [206 P.2d 62] [cert. den., 338 U.S. 838 (94 L.Ed. 512, 70 S.Ct. 50)]; *People* v. *Foogert* (1948) 85 Cal.App.2d 290, 298 [193 P.2d 14]; *People* v. *McKinney* (1945) 71 Cal.App.2d 5, 15 [161 P.2d 957]; *People* v. *Caberera* (1930) 104 Cal.App. 414, 415 [286 P. 176]; *People* v. *Chiappelone* (1928) 90 Cal.App. 472, 475 [265 P. 976]; and *People* v. *Cornell* (1916) 29 Cal.App. 430, 440 [155 P. 1026] [but cf., p. 447 on rehg.].)

The defendants assert that the special findings cannot be considered as special verdicts because a special verdict is only authorized where the jury is in doubt as to the legal effect of the facts proved. (Pen. Code, § 1150.) They rely on numerous cases which have upheld the refusal of the trial court to submit special verdicts to the jury. (*People* v. *Perry* (1972) 7 Cal.3d 756, 783-784 [103 Cal.Rptr. 161, 499 P.2d 129]; *People* v. *Mardian* (1975) 47 Cal.App.3d 16, 47 [121 Cal.Rptr. 269]; *People* v. *Lee* (1969) 275 Cal.App.2d 827, 833 [80 Cal.Rptr. 491]; *People* v. *Rhone* (1968) 267 Cal.App.2d 652, 659-660 [73 Cal.Rptr. 463]; *People* v. *Canard* (1967) 257 Cal.App.2d 444, 465 [65 Cal.Rptr. 15] [cert. den., 393 U.S. 912 (21 L.Ed.2d 198, 89 S.Ct. 231)]; *People* v. *Rehman, supra,* 253 Cal.App.2d 119, 157-158; *People* v. *Mason* (1960) 184 Cal.App.2d 317, 369-370 [7 Cal.Rptr. 627] [cert. den., 366 U.S. 904 (6 L.Ed.2d 203, 81 S.Ct. 1046)]; and *People* v. *Allen* (1941) 47 Cal.App.2d 735, 748 [118 P.2d 927].) Typical is *People* v. *Rehman, supra,* where the court stated: "The one and

only crime with which appellants were charged was conspiracy. [Citation.] If the jury found appellants entered into the illegal agreement and the jury unanimously agreed that one of them committed any one of the specified overt acts even though a separate crime was thereby shown to have also been committed, there could remain in the mind of the jury no 'doubt as to the legal effect of the facts proved' so as to justify rendition of a special verdict. The only 'legal effect of the facts proved' would be that appellants were guilty of conspiracy as charged. On the other hand, if the jury did not find entry into the unlawful agreement plus the overt act, the only 'legal effect of the facts proved' would be that appellants were not guilty of conspiracy. [¶] . . . The jury having been fully and properly instructed in this connection [citation], a general verdict was mandatory under Penal Code section 1150." (253 Cal.App.2d 157-158; see also *People* v. *Canard, supra,* 257 Cal.App.2d 444, 465, and *People* v. *Mason, supra,* 184 Cal.App.2d 317, 369-370.)

The statement that a general verdict was mandatory must be read in context. Even if it may have been an abuse of discretion to comply with the prosecution's request for special findings in this case, the principal issues here are the jurors' failure to have returned the submitted general verdicts and having failed to do so, the effect of the special findings which were in fact returned. The foregoing cases do not meet those issues.

"There are innumerable authorities which declare that the form of the verdict is immaterial if the intention to convict of the crime charged is unmistakably expressed. [Citations.]" (*People* v. *McKinney, supra,* 71 Cal.App.2d 5, 13; see also *People* v. *Collins* (1925) 195 Cal. 325, 337 [233 P. 97]; *People* v. *Perdue* (1874) 49 Cal. 425, 427; *People* v. *McCarty* (1874) 48 Cal. 557, 559; *People* v. *Harders* (1962) 201 Cal.App.2d 795, 798 [20 Cal.Rptr. 595]; *People* v. *Reddick* (1959) 176 Cal.App.2d 806, 821 [1 Cal.Rptr. 767]; *People* v. *Foogert, supra,* 85 Cal.App.2d 290, 298; *People* v. *Flohr* (1939) 30 Cal.App.2d 576, 581 [86 P.2d 862]; *People* v. *Adams* (1928) 92 Cal.App. 6, 18 [267 P. 906]; *People* v. *Sheik* (1925) 75 Cal.App. 421, 426 [243 P. 39]; *People* v. *Mercado* (1922) 59 Cal.App. 69, 74 [209 P. 1035]; and *People* v. *Cornell, supra,* 29 Cal.App. 430, 441-444; cf., *People* v. *Tilley* (1901) 135 Cal. 61, 62-65 [67 P. 42] [questioned in *People* v. *Tong* (1909) 155 Cal. 579, 580 (102 P. 263), and consistently distinguished following adoption of § 4½ (now § 13) of art. VI of the state Const.]; see *People* v. *Hartridge* (1955) 134 Cal.App.2d 659, 665 [286 P.2d 72], and cases cited.)

In *People* v. *Reddick, supra,* the court stated: "No particular form of verdict is required, so long as it clearly indicates the intention of the jury to find the defendant guilty of the offense with which he is charged. It is sufficient if it finds him guilty by reference to a specific count contained in the information. [Citations.]" (176 Cal.App.2d at p. 821.)

The defendants seek to avoid the application of the rationale expressed in the foregoing cases by virtue of a strict construction of the provisions of sections 1150 and 1151 of the Penal Code. They point out that in contrast to most of the foregoing cases, the special findings in this case contain no reference to "guilt" or "guilty" and therefore they in no sense can be treated as general verdicts. That argument does not hold water. In *People* v. *McCarty, supra,* the verdict read: " 'We, the undersigned jurors, find a verdict of murder in the second degree.' " In the second year after the adoption of language substantially the same as that now found in sections 1150 and 1151, the court stated: "The Penal Code contains a form of the general verdict to be rendered by the jury upon a plea of not guilty, and defines the import of a verdict when found in accordance with the form there given. But an adherence by the jury to the form of the verdict there given is not made essential by the statute; a mere departure from such form does not, of itself, vitiate the verdict (section one thousand four hundred and four); and, under section one thousand one hundred and sixty-one of the same Code, an informal verdict is sufficient, if it can be clearly understood as being a general verdict of guilty or not guilty. There is no difficutly [*sic*] in understanding the verdict rendered here as being a verdict that the defendant is guilty of the crime of murder in the second degree charged in the indictment." (48 Cal. at p. 559; see also *People* v. *Perdue, supra,* 49 Cal. 425, 427.) The findings in this case when read in the light of the indictment, the issues submitted to the jury by the court, and the other verdicts returned by the jury, must be understood as findings that the defendants were guilty of conspiracy as charged in the indictment. The title may be disregarded as surplusage.

The defendants also assert that neither can like special findings be considered as special verdicts under the provisions of sections 1152-1156 of the Penal Code because they do not comply with those provisions. Section 1152 provides: "A special verdict is that by which the jury find the facts only, leaving the judgment to the court. It must present the conclusions of fact as established by the evidence, and not the evidence to prove them, and these conclusions of fact must be so presented as that

nothing remains to the court but to draw conclusions of law upon them." Section 1156 states: "If the jury do not, in a special verdict, pronounce affirmatively or negatively on the facts necessary to enable the court to give judgment, or if they find the evidence of facts merely, and not the conclusions of fact, from the evidence, as established to their satisfaction, the court shall direct the jury to retire and return another special verdict. The court may explain to the jury the defect or insufficiency in the special verdict returned, and the form which the special verdict to be returned must take." They acknowledge that special findings may be used to establish aggravated offenses or enhanced punishment. (See *People* v. *Beamon* (1973) 8 Cal.3d 625, 629, fn. 2 [105 Cal.Rptr. 681, 504 P.2d 905]; *People* v. *Gillette* (1959) 171 Cal.App.2d 497, 504-505 [341 P.2d 398]; and *People* v. *Galuppo* (1947) 81 Cal.App.2d 843, 849-851 [185 P.2d 335].) They claim that in this case the findings fail to include all the elements of the offense of conspiracy.

■ The crime of conspiracy requires proof of a criminal agreement, together with proof of an overt act in furtherance of the conspiracy. (See *People* v. *Robinson* (1954) 43 Cal.2d 132, 138 [271 P.2d 865].) There must be proof of the specific intent of each alleged coconspirator to participate in the conspiracy. (*People* v. *Bowman* (1958) 156 Cal.App.2d 784, 797-799 [320 P.2d 70]; and 1 Witkin, *op. cit., supra,* §§ 107-108, pp. 103-105.) Where the conspiracy is one to commit an offense requiring a specific intent it is necessary to establish both the intent to conspire and the specific intent to commit the particular offense. (*People* v. *Horn* (1974) 12 Cal.3d 290, 296 [115 Cal.Rptr. 516, 524 P.2d 1300].)

■ In *People* v. *Samarjian* (1966) 240 Cal.App.2d 13 [49 Cal.Rptr. 180], a conviction for conspiracy to commit forgery of parimutuel tickets was reversed for failure to show an agreement between the defendant who was found in possession of printing plates which could be used for the preparation of false parimutuel tickets and parties who had presented such tickets. (240 Cal.App.2d at pp. 17-20.) Here, on the other hand, there was ample evidence to connect each of the defendants with the other, and each was observed engaged in activities which would contribute to the end for which the altered parimutuel tickets obviously would be used. The jury was instructed fully and properly on the elements of conspiracy. The special findings, that each conspired to commit the substantive crime of which he was also found guilty, cannot be interpreted as other than a finding of guilt on the conspiracy count. It is immaterial whether we view the special finding as an erroneous

expression of a general verdict of guilt, or as a special verdict. In either event the trial court properly concluded that the jury had found all facts necessary to establish the guilt of each defendant on the conspiracy charge.

Section 13 (former § 4½) of article VI of the California Constitution provides in pertinent part: "No judgment shall be set aside, or new trial granted, in any cause . . . for any error as to any matter of procedure, unless after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice." (See also Pen. Code, §§ 960, 1258 and 1404; *People* v. *Foogert, supra,* 85 Cal.App.2d 290, 298-299; *People* v. *McKinney, supra,* 71 Cal.App.2d 5, 14; and *People* v. *Mercado, supra,* 59 Cal.App. 69, 74.) There has been no miscarriage of justice here.

## III

■ There is substantial evidence to sustain the conviction of John Bratis as an aider and abettor of the two substantive charges, and as a conspirator. ■ The test on appeal is set forth in *People* v. *Mosher* (1962) 1 Cal.3d 379 [82 Cal.Rptr. 379, 461 P.2d 659], as follows: "Defendant's contention basically fails because this court must view the evidence in a light most favorable to respondent and presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.] The People may rely on circumstantial evidence to connect the defendant with the commission of the crime charged and to establish beyond a reasonable doubt that he committed it. [Citations.] If the circumstances reasonably justify the trial court's findings, an appellate court cannot reverse merely because the circumstances might also be reasonably reconciled with a contrary finding. [Citations.] The test on appeal becomes whether substantial evidence supports the conclusion of the trier of fact, not whether the evidence proves guilt beyond a reasonable doubt. [Citations.]" (1 Cal.3d at p. 395; see also *People* v. *Donahue* (1975) 46 Cal.App.3d 832, 836-837 [120 Cal.Rptr. 489]; and *People* v. *Aday* (1964) 226 Cal.App.2d 520, 533-534 [38 Cal.Rptr. 199] [cert. den., 379 U.S. 931 (13 L.Ed.2d 343, 85 S.Ct. 329)].)

■ A review of the record indicates substantial evidence to support the jury's conclusion that John Bratis was guilty of violations of Business and Professions Code sections 19666 and 19667 and Penal Code section

182. The record shows that on January 21, 1976, the day of the arrests, John Bratis went with appellants Peter Bratis and Dennis Cambitsis to the Hertz Rent-A-Truck office in South San Francisco, where Cambitsis and Peter Bratis rented the yellow Chevy van. On the same day, Officer Gilchrist saw John Bratis talking with Dennis Cambitsis at the racetrack. Officer Gilchrist also saw John Bratis pick up discarded parimutuel tickets. Later, Sergeant Glenn saw John Bratis walk from the yellow van and join Cambitsis: As he kept an intermittent surveillance of the van, Sergeant Glenn saw John Bratis walk from the van a second time. Officer Culmer and Sergeant Glenn watched John Bratis as he observed the fifth race. Officer Culmer next saw John Bratis yelling from some bushes, across the picnic area, to the yellow van. Officer Culmer also saw Dennis Cambitsis lean out of the window of the van, make eye contact with John Bratis and then lean back inside the van.

The orders admitting defendants to probation are affirmed.

Elkington, J., and Weinberger, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 25, 1977. Bird, C. J., and Mosk, J., were of the opinion that the petition should be granted.

---

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.